UNITED STATES DISTRICT COURT JUDGE TORRES
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAVID ATTALI,

                                    15 CV 00426

                              Plaintiff,                    **COMPLAINT**
                                                            **WITH JURY DEMAND**

        - against -

CITY OF NEW YORK, P.O. CHRISTOPHER DELBROCOLO,
P.O. JOSEPH BENEDUCE, P.O. BRENDAN SULLIVAN, P.O.
PHILLIP MIRANDA, P.O. "JOHN" DRUMMY, DEPUTY
INSPECTOR KEVIN BURKE, SGT. ALEX PORCELLI, SGT.
FELIX SANTANA, and LT. DAVID CHANG, Sued In Their
Individual And Official Capacities,

                              Defendants.
------------------------------------------------------------------X



        Plaintiff DAVID ATTALI, by and through his attorneys, the law office of AVALLONE

& BELLISTRI, LLP, complaining of Defendants, alleges as follows:

        1.      This action is hereby commenced for the purpose of seeking to secure protection

of, and to redress the deprivation of, rights secured and protected by the United States

Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, New York

State Executive Law §§ 296, et seq. and the New York City Human Rights Law, N.Y.C.

Administrative Code §§ 8-107, et seq., providing for relief from the above-captioned

Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff

DAVID ATTALI's race, religion and national origin, for retaliation against Plaintiff ATTALI for

engaging in the protected activity of formally complaining of said discrimination, and the

creation of a hostile work environment which Plaintiff was forced to endure.

        2.      Additionally, this claim seeks money damages, both accrued and prospective, on

behalf of Plaintiff DAVID ATTALI and attorney's fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION

3.　　The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§ 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

4.　　This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

5.　　Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

6.　　The rights, privileges and immunities sought herein to be redressed are those secured by the freedom of speech clause of the First Amendment and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, as well as provisions against race, religion and national origin discrimination, retaliation in employment and the creation of a hostile work environment, based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, along with applicable provisions of the New York State Constitution, the New York State Executive Law and the New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

7.　　On or about July 18, 2014, Plaintiff DAVID ATTALI, in accordance with applicable law, filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

8.　　Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices based upon race, religion, national origin, retaliation for engaging in protected activity and the creation of a hostile work environment.

9.     On November 17, 2014, the EEOC issued a "Right to Sue" Letter advising Plaintiff DAVID ATTALI of the completion of his prerequisites to file suit in federal court. Plaintiff received said "Right to Sue" Letter on November 20, 2014. A copy of the "Right to Sue" Letter is annexed hereto (see **Exhibit "A")**.

## VENUE

10.     Venue is proper within the Southern District of this Honorable Court, City of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of New York County (Manhattan), and the instant causes of action are based upon violations of the New York State Constitution, the New York State Executive Law and the New York City Human Rights Law.

## PARTIES

11.     Plaintiff DAVID ATTALI is a Jewish male with dual citizenship of the United States of America and Israel. Plaintiff ATTALI is over twenty-one (21) years of age and a resident of Kings County, New York. Prior to his constructive discharge, Plaintiff ATTALI was an employee of Defendant CITY OF NEW YORK ("CITY"), more specifically, the Police Department of the City of New York ("NYPD"). As an NYPD police officer, Plaintiff ATTALI was stationed at the World Trade Center Command ("WTC Command") located at 19 Varick Street, New York, N.Y.

12.     Defendant CITY was and is a municipal corporation organized and existing under, and by virtue of, the laws of the State of New York, and at all times relevant to this Federal Complaint ("Complaint"), was Plaintiff DAVID ATTALI's employer, with its central offices in the County of New York, and numerous other offices and facilities throughout the City and State of New York. For purposes of this litigation, Defendant CITY may be identified interchangeably using CITY or NYPD to identify Plaintiff's former employer.

13.     Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000-E, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

14.     Defendant P.O. CHRISTOPHER DELBROCOLO ("DELBROCOLO"), at all times relevant to this Complaint, was an employee of the CITY, a member of the NYPD and a Patrolmen's Benevolent Association ("PBA") delegate, stationed at the WTC Command located at 19 Varick Street, New York, N.Y. Defendant DELBROCOLO is sued in his individual and official capacities.

15.     Defendant P.O. JOSEPH BENEDUCE ("BENEDUCE"), at all times relevant to this Complaint, was an employee of the CITY, a member of the NYPD and a Patrolmen's Benevolent Association ("PBA") delegate, stationed at the World Trade Center Command located at 19 Varick Street, New York, N.Y. Defendant BENADUCE is sued in his individual and official capacities.

16.     Defendant P.O. BRENDAN SULLIVAN ("SULLIVAN"), at all times relevant to this Complaint, was an employee of the CITY and a member of the NYPD, stationed at the WTC Command located at 19 Varick Street, New York, N.Y. Defendant SULLIVAN is sued in his individual and official capacities.

17.     Defendant P.O. PHILLIP MIRANDA ("MIRANDA"), at all times relevant to this Complaint, was an employee of the CITY and a member of the NYPD, stationed at the WTC Command located at 19 Varick Street, New York, N.Y. Defendant MIRANDA is sued in his individual and official capacities.

18.     Defendant P.O. "JOHN" DRUMMY ("DRUMMY"), at all times relevant to this Complaint, was an employee of the CITY and a member of the NYPD, stationed at the WTC

Command located at 19 Varick Street, New York, N.Y. Defendant DRUMMY is sued in his individual and official capacities.

19.     Defendant DEPUTY INSPECTOR KEVIN BURKE ("BURKE"), at all times relevant to this Complaint, was an NYPD Deputy Inspector and Plaintiff DAVID ATTALI's superior officer and the Commanding Officer of the WTC Command located at 19 Varick Street, New York, N.Y. Defendant BURKE is sued in his individual and official capacities.

20.     Defendant SERGEANT ALEX PORCELLI ("PORCELLI"), at all times relevant to this Complaint, was an NYPD Sergeant and Plaintiff DAVID ATTALI's supervisor at the WTC Command located at 19 Varick Street, New York, N.Y. Defendant PORCELLI is sued in his individual and official capacities.

21.     Defendant SERGEANT FELIX SANTANA ("SANTANA"), at all times relevant to this Complaint, was an NYPD Sergeant and Plaintiff DAVID ATTALI's supervisor at the WTC Command located at 19 Varick Street, New York, N.Y. Defendant SANTANA is sued in his individual and official capacities.

22.     Defendant LIEUTENANT DAVID CHANG ("CHANG"), at all times relevant to this Complaint, was an NYPD Lieutenant and Plaintiff DAVID ATTALI's supervisor at the WTC Command located at 19 Varick Street, New York, N.Y. Defendant CHANG is sued in his individual and official capacities.

## NATURE OF ACTION

23.     This is an action for declaratory relief and damages to secure protection of, and to redress the deprivation of, rights secured by the United States Constitution and the New York State Constitution. This action seeks relief for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, New York State Executive Law §§ 296, et seq. and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107, et seq. These statutes provide for

relief against discrimination in employment and seek to correct unlawful employment practices such as those undertaken by Defendants. The unlawful actions of Defendants were based upon Plaintiff DAVID ATTALI's race, religion and national origin, and in retaliation for Plaintiff ATTALI's formal and informal complaints of discrimination and harassment. Defendants created a hostile work environment that Plaintiff ATTALI was forced to endure. Defendants allowed said hostile environment to continue and failed to transfer Plaintiff out of these hostile conditions. Because of Defendants' unlawful actions, Plaintiff ATTALI was unable to remain a sworn officer and CITY employee, ultimately leading to his constructive discharge from the NYPD.

24.     Additionally, this claim seeks money damages, both accrued and prospective, on behalf of Plaintiff DAVID ATTALI and attorney's fees pursuant to 42 U.S.C. § 1988.

## **RELEVANT FACTS**

25.     Plaintiff DAVID ATTALI is a male of Jewish faith and a dual citizen of the United States and Israel. As such, he is a member of a protected class.

26.     Plaintiff DAVID ATTALI has been active in his opposition to discriminatory practices, having documented his personal charges of employment discrimination with the NYPD OEEO and the EEOC.

27.     On July 7, 2008, Plaintiff DAVID ATTALI fulfilled his life-long dream of becoming a sworn officer in the NYPD.

28.     Plaintiff DAVID ATTALI's goal was to complete a minimum of twenty (20) years of service with the NYPD, thereby earning a pension and health benefits for himself and his family.

29.     Plaintiff DAVID ATTALI was a decorated Police Officer employed by the NYPD from July 7, 2008 until August 22, 2014 when he was forced to retire ("constructively discharged") due to the discriminatory and retaliatory conduct of Defendants and hostile work environment at his place of employment, the WTC Command located at 19 Varick Street, New York City, N.Y., where he was stationed at all relevant times to this Complaint.

6

30.     Even before being assigned to the WTC Command, and almost immediately upon taking to the streets of New York City as a rookie patrol officer, Plaintiff ATTALI was subjected to discriminatory animus harbored toward the Jewish faith, race and national origin by some of his fellow officers and supervisors.

31.     For example, in 2009, while stationed at the 67th Precinct, one of Plaintiff ATTALI's co-workers told Plaintiff to call his cell phone. When Plaintiff ATTALI called the officer's phone, the ringtone was the sound of Adolf Hitler giving a speech.

32.     When Plaintiff ATTALI was assigned to the 67th Precinct, most of the officers did not initially know that Plaintiff was of Jewish faith, race and national origin. Numerous NYPD officers would make derogatory remarks and comments concerning Jews while in the performance of regular patrol functions and duties in and around Brooklyn, New York.

33.     One such instance occurred in 2010 while Plaintiff ATTALI was on Impact Patrol riding in an NYPD vehicle with a fellow police officer who commented on several young Jewish boys simply walking down a sidewalk in Brooklyn: "I bet you those Christ-killers have horns under those yamacas."

34.     In 2010, while assigned to the 70th Precinct, Plaintiff ATTALI witnessed an unknown NYPD police officer's heated verbal tirade directed at Jews in general at a crime scene in the 66th Precinct. These anti-Semitic events deeply disturbed Plaintiff ATTALI who quickly recognized that numerous NYPD officers harbor animus toward members of the Jewish faith, race and national origin.

35.     In 2011, Plaintiff DAVID ATTALI was transferred to the WTC Command where he always maintained an exemplary performance record. Plaintiff ATTALI's personnel file reflects a clean disciplinary history and he has never had a substantiated civilian complaint lodged against him.

36.     During his time assigned to the WTC Command, Plaintiff ATTALI was subjected to a hostile work environment whereby his immediate supervisor, Defendant SGT. PORCELLI, along with other WTC Command supervisors, condoned vicious and persistent hateful name calling, bullying and anti-Semitic behavior by several NYPD officers, all in the presence of SGT. PORCELLI and other supervisors who did absolutely nothing to stop this unlawful behavior.

37.    While assigned to the WTC Command, Defendants consistently treated Plaintiff DAVID ATTALI differently than other similarly situated non-Jewish members of the NYPD. Upon his fellow co-workers' discovery that he observed the Sabbath, Plaintiff ATTALI's Jewish faith, race and national origin became known to his fellow co-workers at the WTC Command and he became a target for discrimination.

38.    Defendants also treated Plaintiff DAVID ATTALI differently than other NYPD members who are not vocal in their opposition to the NYPD's discriminatory practices in the terms and conditions of employment.

39.    Plaintiff DAVID ATTALI's coworkers, specifically Defendants P.O. DELBROCOLO, P.O. BENEDUCE, P.O. SULLIVAN, P.O. MIRANDA and P.O. DRUMMY, constantly referred to Plaintiff ATTALI by derogatory, anti-Semitic names such as "dirty Jew," "dirty fucking Jew" or "the Jew" all in the presence of NYPD supervisors who did nothing to deter this unlawful discrimination.

40.    In early 2013, one of Plaintiff DAVID ATTALI's co-workers anonymously placed a handwritten note on Plaintiff's locker. The note read: "This sign is covered with bacon grease. If anyone touches it, he will go straight to hell."

41.    From January 2013 up until *after* Plaintiff DAVID ATTALI filed an internal NYPD OEEO charge of discrimination in May 2014, Plaintiff ATTALI's co-workers repeatedly, and without provocation, vandalized Plaintiff's locker at the WTC Command by writing hateful and abusive language and messages consisting of swastikas, newspaper clippings of pork, ham, salami and bacon advertisements, the words "DIRTY JEW" carved into an orange sticker and the following letters cut out of various newspaper headlines: "HAIL HITLER."

42.    Plaintiff DAVID ATTALI would immediately remove these hateful words, photos and drawings, yet Defendants would soon thereafter place new hateful words, photos and drawings onto his locker. Again, Plaintiff ATTALI would immediately remove the material, yet

8

Defendants persistently placed more and more on his locker. This vicious cycle continued for over a year.

43.     Throughout this entire time, Plaintiff DAVID ATTALI's locker and the hateful material was in full view of all who walked into the men's locker room at the WTC Command, including Plaintiff ATTALI's NYPD supervisors who would come into the locker room on a daily basis to perform mandatory stationhouse inspections, yet never once did Defendants say or do anything concerning this unlawful behavior.

44.     On December 16, 2013, Defendant P.O. DRUMMY spoke to Plaintiff DAVID ATTALI using a mock German accent, stating the following:

**P.O. Drummy:**     [Mock German Accent] Do you want to go to this camp for the summer. Oh you lose so much weight.  You be in best shape of your life.

**Plaintiff Attali:**     What do you mean?

**P.O. Drummy:**     [Mock German Accent] Concentration camp.

**Plaintiff Attali:**     That's dumb.

**P.O. Drummy:**     [Mock German Accent] Think about it. Where do Jews with A.D.D. get sent?

**Plaintiff Atttali:**     Where?

**P.O. Drummy:**     [Mock German Accent] Concentration Camps.

45.     In January 2014, and then again in March 2014, Defendant P.O. DELBROCOLO threw matches at Plaintiff ATTALI and stated: "I hear you Jews go up quickly like in the camps," referring to Nazi concentration camps where nearly six million Jews were killed.

46.     In January 2014, and again on several occasions thereafter up until Plaintiff DAVID ATTALI's constructive discharge in early August of 2014, Defendants would pass gas and remark to Plaintiff: "That was the same gas Hitler used to kill your people."

47.     On January 8, 2014, Defendant P.O. DELBROCOLO texted the words "Jew be dooby doo" to Plaintiff DAVID ATTALI.

48.     On January 8, 2014, the following text conversation occurred between Plaintiff DAVID ATTALI and Defendant P.O. DELBROCOLO:

**Plaintiff Attali:**     Suks cause Im not going down to get em

**P.O. Delbrocolo:**     K well u know where they r

**Plaintiff Attali:**     No never got this text

**P.O. Delbrocolo:**     I have a record of it and your lazy Jew response

49.     On January 19, 2014, Defendant P.O. SULLIVAN sent out a group text message to all of his NYPD co-workers at the WTC Command, including Plaintiff DAVID ATTALI, containing a photo of two dark silhouette figures with the backdrop of the U.S. Department of Defense and the Israeli Flag.

50.     On January 20, 2014, the following text conversation occurred between Plaintiff DAVID ATTALI and Defendant P.O. DELBROCOLO:

**Plaintiff Attali:**     U serious bout sgt gigga with the parking

**P.O. Delbrocolo:**     Yep

**Plaintiff Attali:**     I never received that

**P.O. Delbrocolo:**     Whatever Jew

51.     On February 5, 2014, the following text conversation occurred between Plaintiff DAVID ATTALI and Defendant P.O. DELBROCOLO:

**P.O. Delbrocolo:**     Fuck you Jew

**Plaintiff Attali:**     Im on meal what u need

**P.O. Delbrocolo:**    Just wanted to say fuck you

52.    In February 2014, P.O. DELBROCOLO threw pennies and nickels at Plaintiff ATTALI, stating: "Can you resist Jew? I hear you Jews can smell money."

53.    In April 2014, in the presence of Plaintiff DAVID ATTALI's supervisors, Defendant P.O. DELBROCOLO stated to Plaintiff ATTALI: "What a great job Hitler did in World War II."

54.    In or about January through April 2014, Plaintiff ATTALI's co-workers would salute him with the Nazi/Hail Hitler salute right in front of the NYPD WTC Command on Varick Street.

55.    On April 6, 2014, Defendant P.O. DELBROCOLO told Plaintiff DAVID ATTALI: "No one likes you. You smell like shit. Piss and Shit."

56.    On April 9, 2014, Defendant P.O. DELBROCOLO, without provocation, texted the words "Jews Suck" to Plaintiff DAVID ATTALI.

57.    On April 10, 2014, Plaintiff DAVID ATTALI sent out a group text to his fellow NYPD officers at the WTC Command:

> **Plaintiff Attali:**    1 pct called thy r tossing cars for movie shoot btw north moore varrick to Hudson
>
> **P.O. Troncoso**:    (inserted a picture of an emoji picture character)
>
> **P.O. Sullivan**:    (attached a photo of Adolf Hitler giving a Nazi salute)
>
> **P.O. Troncoso**:    Lol
>
> **P.O. Sullivan**:    He's just pointing out which ones [cars] to move
>
> **P.O. Troncoso**:    Lmao

Everyone in the group message viewed this exchange.

58. On April 13, 2014, Defendant DELBROCOLO texted Plaintiff ATTALI as follows:

> **Plaintiff ATTALI**:  hey swing by around the corner from the command for [sic] street from the Citibank maybe its there
>
> **P.O. Delbrocolo**:  It's on north moore lazy fucking kike

59. On May 5, 2014 at approximately 12:10AM, while Plaintiff DAVID ATTALI was sitting at the front desk at the WTC Command, Defendant P.O. DELBROCOLO entered the stationhouse and "greeted" Plaintiff ATTALI by stating the slur "dirty Jew" in the presence of Defendant SGT. SANTANA who did not reprimand P.O. DELBROCOLO in any way for making this comment. SGT. SANTANA simply condoned this discriminatory conduct.

60. On May 5, 2014, Defendant P.O. DELBROCOLO, in the presence Defendants SGT. SANTANA and P.O. BENEDUCE stated: "I wish I could go back to the 30's and shake Hitler's hand." This comment was directed at Plaintiff ATTALI who was also present. Again, SGT. SANTANA turned a blind eye towards this discriminatory conduct.

61. On May 7, 2014, Defendant P.O. DELBROCOLO sent Plaintiff DAVID ATTALI a text message with a movie poster depicting actors with the title of the movie "JewTopia" and the message read "Oye! Can your big nose smell the Oscar buzz?"

62. On May 17, 2014, in order to harass Plaintiff DAVID ATTALI, Defendant P.O. SULLIVAN sent a group text message stating "Everybody txt the jew [referring to Plaintiff ATTALI] every 45 min." The text was sent to six (6) officers, including Plaintiff ATTALI. P.O. Mergeche responded by texting "Lol" and Defendant P.O. DRUMMY subsequently responded by sending a video believed to be filmed by Palestinian/Hamas television and posted on an anti-Jewish website, depicting a male impersonating a rabbi in a derogatory matter. P.O. Mergeche responded "Wow."

63. On May 19, 2014, Defendant P.O. DELBROCOLO texted the following to Plaintiff DAVID ATTALI: "I have 2062, jew I can rhyme all the time"

64. On May 21, 2014, Plaintiff DAVID ATTALI had just recently shaved his hair and Defendant P.O. DELBROCOLO, in the presence of Defendant SGT. SANTANA, told Plaintiff

ATTALI: "You have that concentration camp 'do.'" Defendant P.O. DELBROCOLO then continued his harassment of Plaintiff ATTALI by saying: "I don't want Jews" and "Jews are (inaudible). Any day could be their last. Highly flammable." Defendant P.O. DELBROCOLO then made a sound mimicking an explosion. Once again, Defendant SGT. SANTANA did nothing to deter this discriminatory behavior.

65.     In or around the beginning of May 2014, someone within the NYPD placed a sign on Plaintiff ATTALI's locker reading "HAIL HITLER." This sign was in plain sight for all male Police Officers entering the locker room to see, including Defendant supervisors.

66.     In or around May 2014, a member of the NYPD scratched a swastika into the paint on Plaintiff ATTALI's locker.

67.     The vandalism to Plaintiff ATTALI's locker continued unabated up until after Plaintiff complained to the NYPD OEEO in late May 2014.

68.     In or around May 2014, Defendants P.O. DELBROCOLO and P.O. BENEDUCE gave Plaintiff DAVID ATTALI a Nazi Salute while in their NYPD uniforms right outside of the WTC Command in full public view.

69.     On May 20, 2014, while in the WTC Command locker room, Defendant PO DELBROCOLO stated to Plaintiff DAVID ATTALI: "Jew. You can smell my change."

70.     On May 27, 2014, Defendants P.O. DELBROCOLO, P.O. BENEDUCE and P.O. MIRANDA made the following statements to Plaintiff DAVID ATTALI:

**P.O. Benaduce**:      Looks like an 80 year old Jew walking around and the fucking J.C.C. [Jewish Community Center] naked.

**P.O. Delbrocolo**:      That fucking Jew phone. You have to pay for more minutes.

**P.O. Miranda**:      Dave (inaudible) the Jew.

**P.O. Delbrocolo**:      I want to push you into an oven and fucking burn.  I want to fucking tattoo a number on you.  When they gave me the (inaudible) the other day and you have that number in there, I think this is Attali's family crest.  Ha Ha Ha.  [Mock German Accent]

13

DKS7741, step up. Breathe into this tube. Oh wait he died. Surprise, surprise. It's happy juice.

71.     On May 28, 2014, while in the locker room of the WTC Command, the following statements where made toward Plaintiff DAVID ATTALI by Defendants P.O. DELBROCOLO and P.O. BENEDUCE:

**P.O. Delbrocolo**:    I don't do that anymore, Jew.  Where's your gun belt?  You full duty? Full Jewty?  Oye.

**P.O. Benaduce**:    Oye Vay

**P.O. Delbrocolo**:    I Jew what I want.  Cut it out Jew.

72.     Throughout this entire time period, Plaintiff ATTALI complained to Defendant SGT. PORCELLI and other NYPD supervisors at the WTC Command regarding the vandalism of his locker and severe and persistent hate speech and derogatory comments made toward him by his NYPD co-workers.  Defendant SGT. PORCELLI and the other NYPD supervisors took no action whatsoever to stop this hostile work environment.

73.     As a result of complaining of the above-mentioned unlawful discrimination to his superiors, and in retaliation for said complaints, Plaintiff DAVID ATTALI began to be called a "rat" and "rat bastard" by his fellow NYPD co-workers. Defendant P.O. SULLIVAN texted Plaintiff DAVID ATTALI as follows: "You're a dirty spy Attali!"

74.     In late May 2014, Plaintiff DAVID ATTALI spoke with the NYPD OEEO regarding the severe and pervasive abuse he was forced to endure by his co-workers at the WTC Command since being transferred there, as well as retaliation by his supervisors and numerous co-workers based upon his complaints of discrimination to Defendant SGT. PORCELLI, his immediate supervisor and other NYPD supervisors.

75.     Only after Plaintiff DAVID ATTALI complained to the NYPD OEEO in late May 2014, *more than a full year after the persistent vandalism first began to occur*, did supervisors from the WTC command finally order the removal of the hate language and clippings from Plaintiff ATTALI's locker, despite the fact that they had first-hand knowledge of

14

the existence of this persistent vandalism. Upon information and belief, the hate material was confiscated and vouchered by the NYPD and is currently in their possession.

76.     Soon thereafter, the hostility toward Plaintiff DAVID ATTALI became even more aggressive. A fellow co-worker violently grabbed Plaintiff ATTALI by his uniform shirt and demanded to know: "Are you wearing a wire?" Plaintiff ATTALI was scared and humiliated.

77.     As a result of the severe and persistent discriminatory animus toward Plaintiff DAVID ATTALI simply for being Jewish, including the abusive and threatening behavior Plaintiff had to endure on a daily basis, as well as retaliation for having lodged complaints with the NYPD OEEO, Plaintiff ATTALI was forced each and every day, without being compensated for overtime, to come to work early so he could change into his uniform. Plaintiff ATTALI did this in order to avoid further unprovoked bullying and hostile encounters with Defendants in the WTC Command locker room. Similarly, Plaintiff ATTALI would leave late after each and every tour of duty, without overtime compensation, just so he could further avoid the hatred and animosity of his co-workers, simply because he is Jewish.

78.     On June 2, 2014, as a result of the aforementioned severe and pervasive abusive work environment, Plaintiff DAVID ATTILI requested a transfer out of the WTC Command to Defendant LT. CHANG. Plaintiff ATTALI explained to LT. CHANG the reasons for his transfer request, i.e. the discrimination, hostile work environment and retaliatory behavior of Defendants.

79.     On June 13, 2014, Plaintiff DAVID ATTALI contacted Sgt. Soto of the NYPD OEEO for a status update to his transfer request due to the abusive and threatening environment within the WTC Command.

80.     On July 14, 2014, Defendant D.I. BURKE denied Plaintiff DAVID ATTALI's transfer application due to the anti-Semitic atmosphere within the WTC Command.

82.     Based upon information and belief, Defendant D.I. BURKE approved twelve (12) transfers during the same period of time that Plaintiff DAVID ATTALI's transfer request to be removed from the hostile work environment was pending.

83.     As a result of Defendant D.I. BURKE's refusal to remove Plaintiff DAVID ATTALI from the abusive environment at the WTC Command, Plaintiff was forced to endure more hostility at the hands of his co-workers.

84.     Defendants' failure to transfer Plaintiff DAVID ATTALI clearly demonstrates that the CITY condones such deplorable discrimination and retaliation by failing to take any action to curtail the hostile work environment and protect Plaintiff from those officers who bullied him, his co-workers who treated him with hatred and disgust simply because of his religion, race and national origin, and his supervisors who turned a blind eye and allowed this situation to continue unabated.

85.     Plaintiff DAVID ATTALI's fellow police officers displayed signs of hatred and displeasure toward him, not just because of his Jewish faith and background, but also because of his complaints to the NYPD, including the OEEO, thereby causing a clear violation of his civil rights.

86.     The creation of this abusive and hostile work environment not only placed an overwhelming emotional toll on Plaintiff DAVID ATTALI and his family, but also placed his physical safety in jeopardy since Plaintiff ATTALI was forced to rely upon his peers for assistance during the course of his police duties. This created a situation in which the possibility of hesitation by Plaintiff's co-workers in response to calls for assistance weighed heavily on Plaintiff ATTALI's mind each and every time he reported for duty with the NYPD.

87.     As a result of this intimidating, hostile and immensely stressful work environment, Plaintiff DAVID ATTALI has sought, and continues to seek on a regular basis, therapy and counseling for psychological conditions created by Defendants.

88.     As a result of the discriminatory and retaliatory conduct of the named Defendants, and the failure to remove Plaintiff from this hostile environment after his repeated requests and pleas for a transfer, Plaintiff DAVID ATTALI was forced to abandon his lifelong dream after only six (6) years of dedicated service as a member of the greatest police department in the world.

89.     Plaintiff DAVID ATTALI could no longer withstand the daily psychological and emotional torture and embarrassment. Furthermore, the discrimination against Plaintiff ATTALI was perpetrated in large part by two PBA delegates, P.O.'s DELBROCOLO and BENEDUCE, who had a duty and responsibility to protect union members in their work environment. Under these circumstances, Plaintiff ATTALI had nowhere to turn to for help within his command.

90.     On August 22, 2014, Plaintiff DAVID ATTALI was forced to retire from the NYPD.

91.     Had it not been for the hostile work environment and subsequent denial of his transfer requests, Plaintiff DAVID ATTALI had no intention whatsoever of retiring from service in the NYPD after only six (6) years.

92.     Plaintiff DAVID ATTALI's "retirement" was tantamount to a constructive discharge.

93.     As a result of Defendants' actions, Plaintiff DAVID ATTALI has suffered significant economic loss, severe emotional distress and mental anguish, embarrassment and humiliation, marital problems, insomnia, depression and anxiety.

## AS AND FOR A FIRST CLAIM FOR
## RACE DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

94.     Plaintiff repeats and re-alleges paragraphs 1 through 93 and incorporates them by reference as if fully stated herein.

95.     Plaintiff alleges that defendant CITY, by and through its agents, engaged in a pattern and practice of discrimination against him with respect to the terms, conditions and privileges of employment based upon Plaintiff's race in violation of 42 U.S.C. § 2000e-2.

96.     As part of its pattern and practice of employment discrimination, Defendant CITY, by and through its agents, treated Plaintiff in a manner indicative of race discrimination.

97.     Defendant CITY knew, or should have known, about this race discrimination in the workplace.

98.     Defendant CITY failed, and refused, to take appropriate action to end the discriminatory treatment and conditions which Plaintiff was subjected to, which was clearly motivated by race and in a clear demonstration of bad faith.

99.     As a result of the discriminatory acts of Defendant CITY under color of law, by and through its agents, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

100.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

**AS AND FOR A SECOND CLAIM FOR
RELIGIOUS DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

101.    Plaintiff re-alleges paragraphs 1 through 100 and incorporates them by reference as if fully stated herein.

102.    Plaintiff alleges that defendants, by and through its agents, engaged in a pattern and practice of religious discrimination against him with respect to the terms, conditions and privileges of employment based upon his religion (Jewish) in violation of 42 U.S.C. § 2000e-2.

103.    As part of its pattern and practice of employment discrimination, Defendant CITY, by and through its agents, subjected plaintiff to religious discrimination and failed to take corrective action.

104.    Defendant CITY knew, or should have known, about the religious discrimination in the workplace.

105.    Defendant CITY failed, and refused, to take appropriate action to end the religious discrimination to which Plaintiff was subjected to, in a clear demonstration of bad faith.

18

106.    As a result of the discriminatory acts of Defendant CITY, by and through its agents, under color of law, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

107.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## AS AND FOR A THIRD CLAIM FOR
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

108.    Plaintiff repeats and re-alleges paragraphs 1 through 107 and incorporates them by reference as if fully stated herein.

109.    Plaintiff alleges that Defendant CITY, by and through its agents, engaged in a pattern and practice of discrimination against him with respect to the terms, conditions and privileges of employment based upon his national origin in violation of 42 U.S.C. § 2000e-2.

110.    As part of its pattern and practice of employment discrimination, Defendant CITY, by and through its agents, treated Plaintiff in a manner indicative of national origin discrimination.

111.    Defendant CITY knew, or should have known, about the national origin discrimination in the workplace.

112.    Defendant CITY failed, and refused, to take appropriate action to end the discriminatory treatment and conditions which Plaintiff was subjected to, which was clearly motivated by national origin, in a clear demonstration of bad faith.

113.    As a result of the discriminatory acts of Defendant CITY, by and through its agents, under color of law, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

114.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## AS AND FOR A FOURTH CLAIM FOR
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

115.    Plaintiff re-alleges paragraphs 1 through 114 and incorporates them by reference as if fully stated herein.

116.    Plaintiff alleges that Defendant CITY, by and through its agents, engaged in retaliation against Plaintiff as a result of his lawful complaints, both formal and informal, about the discriminatory treatment in his workplace in violation of 42 U.S.C. §2000e-3(a)

117.    Defendant CITY knew, or should have known, about the retaliation in the workplace.

118.    Defendant CITY failed, and refused, to take appropriate action to end the retaliatory treatment and conditions that Plaintiff was subjected to, in a clear demonstration of bad faith.

119.    As a result of the retaliatory acts of Defendants, by and through its agents, under color of law, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

120.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## AS AND FOR A FIFTH CLAIM FOR
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

121.    Plaintiff re-alleges paragraphs 1 through 120 and incorporates them by reference as if fully stated herein.

122.    Plaintiff alleges that Defendant CITY, by and through its agents, created and condoned a hostile work environment against Plaintiff in violation of 42 U.S.C. §2000e-3(a.

123.    As a result of the severe and pervasive discriminatory and retaliatory acts of Defendant CITY, by and through its agents, under color of law, Plaintiff suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

124.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

**AS AND FOR A SIXTH CLAIM FOR**
**RACE DISCRIMINATION IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 296**

125.    Plaintiff re-alleges Paragraphs 1 through 124 and incorporates them by reference as if fully stated herein.

126.    Plaintiff alleges that New York State Executive Law § 296 makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon race, religion and national origin.

127.    Plaintiff alleges that based upon the foregoing, Defendant CITY, by and through its agents, discriminated against Plaintiff on the basis of race, religion and national origin.

128.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of Defendant CITY, by and through its agents, he has suffered the indignity of race, religion and national origin discrimination and great humiliation.

129.    Plaintiff alleges that because of Defendant CITY's violations, he has suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

130.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## AS AND FOR A SEVENTH CLAIM FOR
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

131.    Plaintiffs re-allege Paragraphs 1 through 130 and incorporate them by reference as if fully stated herein.

132.    Plaintiff alleges that New York State Executive Law § 296 makes it unlawful to create, condone and/or tolerate a hostile work environment based upon race, free speech and other protected classifications.

133.    Plaintiff alleges that based upon the foregoing, Defendant CITY, by and thorough its agents, created, condoned and tolerated a hostile work environment which negatively affected the terms and conditions of his employment.

134.    Plaintiff alleges that because of Defendant CITY's hostile work environment, he has suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

135.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## AS AND FOR AN EIGHTH CLAIM FOR
## RACE, RELIGION AND NATIONAL ORIGIN DISCRIMINATION
## IN VIOLATION OF NEW YORK CITY ADMINSTRATIVE CODE § 8-107

136.    Plaintiff re-alleges Paragraphs 1 through 135 and incorporates them by reference as if fully stated herein.

137.    Plaintiff alleges that New York City Administrative Code § 8-107 makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon race, religion and national origin.

138.    Plaintiff alleges that based upon the foregoing, Defendant CITY, by and through its agents, discriminated against him on the basis of race, religion and national origin.

139.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of Defendant CITY, he has suffered the indignity of discrimination and great humiliation.

140.    Plaintiff alleges that because of Defendant CITY's violations, Plaintiff has suffered economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

141.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

**AS AND FOR A NINTH CLAIM FOR
HOSTILE WORK ENVIRONMENT IN VIOLATION OF
NEW YORK CITY ADMINISTRATIVE CODE § 8-107**

142.    Plaintiff re-allege Paragraphs 1 through 141 and incorporates them by reference as if fully stated herein.

143.    Plaintiff alleges that New York City Administrative Code § 8-107 makes it unlawful to create, condone or and/or tolerate a hostile work environment based upon race, free speech and other protected classifications.

144.    Plaintiff alleges that based upon the foregoing, Defendant CITY, by and through its agents, created, condoned and/or tolerated a hostile work environment which negatively affected the terms and conditions of his employment.

145.    Plaintiff alleges that Defendant CITY's violations caused Plaintiff to suffer economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

146.    Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## AS AND FOR A TENTH CLAIM PURSUANT TO
## 42 U.S.C. § 1983 FOR EQUAL PROTECTION VIOLATIONS
## AGAINST ALL INDIVIDUAL DEFENDANTS

147.   Plaintiff re-alleges Paragraphs 1 through 146 and incorporates them by reference as if fully stated herein.

148.   All of the acts and conduct of Defendant CITY, by and though its agents, herein stated were done under color of state law, while in the performance of their duties as Police Officers and Supervisors for the NYPD.

149.   The facts and circumstances cited above are in violation of Plaintiff's Fourteenth Amendment right under the Equal Protection Clause of the United States Constitution to be free from retaliation, discrimination and harassment in his employment with the CITY and NYPD.

150.   Defendants failed to properly investigate and address the allegations made by the Plaintiff of discrimination and hostile work environment, as clearly evidenced by, *inter alia*, derogatory and racially motivated actions, slurs and commentary by Defendants DELBROCOLLO, BENEDUCE, SULLIVAN, MIRANDA and DRUMMY and retaliation and harassment by theses same Defendants against Plaintiff for lawfully speaking out against Defendants regarding their unlawful conduct.

151.   Plaintiff alleges that Defendants BURKE, PORCELLI, SANTANA and CHANG's violations as NYPD supervisors, i.e. their failure to take any remedial and/or corrective action when specifically called upon to mediate prevalent discrimination, retaliation, hostile working conditions all under their control and supervision, of which they knew or should have known the existence of, caused Plaintiff to sustain extensive economic damages, emotional distress, humiliation and embarrassment, legal and related expenses.

152.   By these actions, Defendants have jointly and separately deprived Plaintiff of his rights under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983 and New York State Executive Law § 296.

153.   Because of the foregoing, Plaintiff has been damaged in the amount of Fifteen Million Dollars ($15,000,000.00).

## JURY TRIAL

154.   Plaintiff demands a trial by jury on all issues in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff DAVID ATTALI prays that this honorable Court grant the following relief:

1.   Declare that the aforementioned actions of Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and New York City Human Rights Law and Administrative Code, along with all applicable statutes;

2.   Declare that the aforementioned discriminatory actions of Defendants were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, New York State Executive Law § 296, et seq. and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107, et seq.;

3.   As and for Plaintiff's First Claim, grant Plaintiff the sum of $15,000,000.00;

4.   As and for Plaintiff's Second Claim, grant Plaintiff the sum of $15,000,000.00;

5.   As and for Plaintiff's Third Claim, grant Plaintiff the sum of $15,000,000.00;

6.   As and for Plaintiff's Fourth Claim, grant Plaintiff the sum of $15,000,000.00;

7.   As and for Plaintiff's Fifth Claim, grant Plaintiff the sum of $15,000,000.;

8.   As and for Plaintiff's Sixth Claim, grant Plaintiff the sum of $15,000,000.00;

9.   As and for Plaintiff's Seventh Claim, grant Plaintiff the sum of $15,000,000.00;

10.     As and for Plaintiff's Eighth Claim, grant Plaintiff the sum of $15,000,000.00;

11.     As and for Plaintiff's Ninth Claim, grant Plaintiff the sum of $15,000,000.00;

12.     As and for Plaintiff's Tenth Claim, grant Plaintiff the sum of $15,000,000.00;

13.     Grant Plaintiff all costs for this action, including reasonable attorney's fees; and

14.     Grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 20, 2014
        Lake Success, New York

Yours, etc.,

AVALLONE & BELLISTRI, LLP
Attorneys for Plaintiff

BY:     _____
        CHRISTOPHER F. BELLISTRI
        ROCCO G. AVALLONE
        3000 Marcus Avenue, Suite 3E07
        Lake Success, New York 11042
        516-986-2500

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To | David Attali<br>1548 E. 2nd Street<br>Brooklyn, NY 11230 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2014-02966** | **Maritza Rondon-Velazquez,**<br>**Investigator** | **(212) 336-3678** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*[signature]* Kevin J. Berry,
**District Director**

NOV 1 7 2014
*(Date Mailed)*

CC  Thomas Doepfner
Assistant Deputy Commissioner
NEW YORK CITY POLICE DEPARTMENT
1 Police Plaza
New York, NY 10038

Erik Seidel, Lieutenant
NEW YORK CITY POLICE DEPARTMENT
Legal Bureau
1 Police Plaza, Room 1406
New York, NY 10038

Rocco Avallone, Esq.
AVALLONE & BELLISTRI
3000 Marcus Avenue
Suite 3E07
Lake Success, NY 11042