UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID ATTALI,

                Plaintiff,

-against-

CITY OF NEW YORK, P.O. CHRISTOPHER DELBROCOLO, P.O. JOSEPH BENEDUCE, P.O. BRENDAN SULLIVAN, P.O. PHILLIP MIRANDA, P.O. "JOHN" DRUMMY, DEPUTY INSPECTOR KEVIN BURKE, SGT. ALEX PORCELLI, SGT. FELIX SANTANA, and LT. DAVID CHANG, Sued In Their Individual And Official Capacities,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: \_9/17/2018\_\_\_

15 Civ. 426 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On January 21, 2015, Plaintiff, former New York Police Department ("NYPD") officer David Attali, brought this employment discrimination action against Defendants the City of New York ("City") and nine police officers. Plaintiff asserts claims for discrimination on the basis of race, religion, and national origin, retaliation, and a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). Plaintiff also brings a claim under 42 U.S.C. § 1983, alleging discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Police Officers Christopher Delbrocolo, Joseph Beneduce, Brendan Sullivan, Phillip Miranda, and John Drummy ("Moving Defendants") move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1]  ECF No. 115.

---

[1] The remaining defendants have filed a motion for summary judgment. ECF No. 119.

For the following reasons, Moving Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's complaint, which the Court accepts as true for the purposes of this motion. *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008). Plaintiff is a Jewish male with dual citizenship of the United States and Israel. Compl. ¶ 11, ECF No. 1. Plaintiff worked as a police officer from July 7, 2008 until August 22, 2014, and was stationed at the World Trade Center Command ("WTC Command") during all relevant times. *Id.* ¶¶ 11, 29.

Plaintiff alleges that he was constructively discharged in August 2014 due to Defendants' conduct. *Id.* ¶ 29. Plaintiff alleges that each of the five Moving Defendants "constantly referred to [him] by derogatory, anti-Semitic names such as 'dirty Jew,' 'dirty fucking Jew' or 'the Jew.'" *Id.* ¶ 39. In addition, the complaint sets forth numerous specific allegations of discriminatory behavior directed at Plaintiff by each Moving Defendant from January 2013 to May 2014. For example, Plaintiff alleges that: Beneduce gave Plaintiff a Nazi salute while wearing a NYPD uniform right outside of the WTC Command, *id.* ¶ 68; Delbrocolo threw matches at Plaintiff and stated, "I hear you Jews go up quickly like in the camps," *id.* ¶ 45; Drummy stated to Plaintiff, in sum and substance, "Do you want to go to the Concentration Camp for the summer? Where do Jews with A.D.D. get sent? Concentration Camps," *id.* ¶ 44; Miranda directed a comment at Plaintiff as "Dave (inaudible) the Jew," *id.* ¶ 70; and Sullivan texted a picture to a group of NYPD officers, including Plaintiff, of Adolf Hitler giving the Nazi salute, *id.* ¶ 57. The complaint contains dozens of similar allegations. Compl. ¶¶ 44–73.

In May 2014, after Plaintiff complained to the NYPD Office of Equal Employment Opportunity about his treatment, Moving Defendants became even more aggressive toward him. *Id.* ¶¶ 74–76. On June 2, 2014, Plaintiff requested a transfer out of the WTC Command due to the "discrimination, hostile work environment and retaliatory behavior of Defendants." *Id.* ¶ 79. On July 14, 2014, Plaintiff's transfer application was denied. *Id.* ¶ 80. On August 22, 2014, Plaintiff retired and now claims that he was constructively discharged from the NYPD because of the "hostile work environment and subsequent denial of his transfer requests," and because he "could no longer withstand the daily psychological and emotional torture and embarrassment." *Id.* ¶¶ 89–91.

## DISCUSSION

I.  Legal Standard

"In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). "Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks and citation omitted); *see also Kee v. Hasty*, No. 01 Civ. 2123, 2004 WL 807071, at *9 (S.D.N.Y. Apr. 14, 2004) ("The issue is not whether the plaintiff will prevail ultimately, but whether the claimant is entitled to offer more evidence in support of the claims." (citing *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Sheppard*, 18 F.3d at 150 (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

3

In adjudicating a Rule 12(c) motion, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

II.  Analysis[2]

A. Claims Against Moving Defendants in Their Official Capacities

Moving Defendants contend that all claims against them in their official capacities should be dismissed because "the City is a named defendant in this action." Defs. Mem. at 2, ECF No. 117. The Court agrees. Plaintiff's claims against Moving Defendants in their official capacities must be dismissed because they are duplicative of the claims against the City. *See, e.g.*, *LaForgia v. Vergano*, No. 15 Civ. 8589, 2017 WL 3034347, at *4 (S.D.N.Y. July 14, 2017) (dismissing claim against defendant in his official capacity as duplicative of claim against town); *Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014) (dismissing claims against defendant in his official capacity as "duplicative of [plaintiff's] other claims against New York City"). Accordingly, Plaintiff's claims against Moving Defendants in their official capacities are DISMISSED.

---

[2] With the exception of the § 1983 claim, which is titled as a claim "against all individual defendants," Compl. at 24, it is unclear whether Plaintiff asserts the remaining Title VII, NYSHRL, and NYCHRL claims against only the City, or whether he also asserts them against Moving Defendants in their individual and official capacities. In an abundance of caution, and in an effort to "draw[] all reasonable inferences in plaintiff's favor," *Sheppard*, 18 F.3d at 150, the Court construes the complaint as asserting all other claims against both the City and against Moving Defendants in their individual and official capacities.

4

B. Claims Against Moving Defendants in Their Individual Capacities

The Court now considers the claims asserted against Moving Defendants in their individual capacities.

1. Title VII Claims

Next, Moving Defendants argue that the Title VII claims against them must be dismissed because individuals are not subject to liability under Title VII. Defs. Mem. at 3. The Court agrees. It is well-established that individuals are not subject to liability under Title VII. *See, e.g.*, *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004). Accordingly, Plaintiff's Title VII claims against Moving Defendants in their individual capacities (Claims One through Five) are DISMISSED.

2. NYSHRL Claims

Moving Defendants seek to dismiss Plaintiff's claims of race discrimination and a hostile work environment under the NYSHRL because Plaintiff does not specify which subsection of § 296 he is asserting claims under, and he does not track the language of § 296(6), which holds an individual defendant personally liable where he aids and abets discrimination. *See* N.Y. Exec. Law § 296(1) (making it unlawful for an employer to discriminate against an individual on the basis of race, religion, and national origin); *id.* § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."). The Second Circuit has interpreted the language of § 296(6) to mean that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be personally liable as an aider and abettor." *Shands v. Lakeland Cent. Sch. Dist.*, No. 15 Civ. 4260, 2017 WL 1194699, at *8 (S.D.N.Y. Mar. 30, 2017) (citation omitted). Personal liability for a coworker who "actually participate[s]" is irrespective

5

of whether that coworker had the authority to hire or fire the plaintiff. *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004). As discussed, the Court construes the complaint as asserting claims against Moving Defendants in their individual capacities, and the Court finds that Plaintiff's allegation that as a result of Moving Defendants' actions, he has "suffered the indignity of race, religion and national origin discrimination and great humiliation," Compl. ¶ 128, in violation of the NYSHRL sufficiently states a claim for aider-and-abettor liability under § 296(6).

Plaintiff, moreover, has sufficiently alleged that each Moving Defendant "actually participated" in the discriminatory conduct. The complaint specifies numerous allegations against Moving Defendants, describing in detail their racially discriminatory behavior directed at Plaintiff. *Id.* ¶¶ 44–73. Each Moving Defendant made a discriminatory statement to Plaintiff or sent a discriminatory text message to Plaintiff directly or to a group chat including Plaintiff. For example, Plaintiff alleges that Beneduce gave him a Nazi salute, *id.* ¶ 68; Delbrocolo texted Plaintiff "Fuck you Jew" and gave him a Nazi salute, *id.* ¶¶ 51, 68; Drummy spoke to Plaintiff in a mock German accent, stating, "Do you want to go to a Concentration Camp for the summer?," *id.* ¶ 44; Miranda referred to Plaintiff as "dirty Jew" and "dirty fucking Jew" in the presence of NYPD supervisors, *id.* ¶ 39; and Sullivan texted Plaintiff "You're a dirty spy Attali," *id.* ¶ 73. These allegations, if true, suffice to establish that Moving Defendants actually participated in the conduct alleged and that they can be held personally liable under the NYSHRL. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." (internal quotation marks and citation omitted)); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77

F. Supp. 2d 376, 381 (S.D.N.Y. 1999) (an individual defendant who actually participates in the discrimination may be held liable under the NYSHRL if the plaintiff pleads "facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme").

Moving Defendants argue that under *Raneri v. McCarey*, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010), an individual cannot aid and abet his own discriminatory conduct under the NYSHRL. Defs. Mem. at 5. *Raneri*, however, stands only for the proposition that an individual cannot aid or abet his own conduct where that plaintiff fails to make any showing of the employer's condonation, encouragement, or approval of the employee's discriminatory acts. 712 F. Supp. 2d at 282. In contrast with *Raneri*, Plaintiff here has alleged that there was a "knowledgeable and intentional participation on [the City's] part" in the unlawful conduct charged. *Id.* He alleges that Moving Defendants aided and abetted the City and one another's conduct, sending out discriminatory text messages in NYPD group chats and referring to Plaintiff by anti-Semitic names in the WTC Command locker room, at the front desk, and in front of NYPD supervisors. Compl. ¶¶ 39, 49, 53, 57, 59, 71. *Raneri* is inapposite because Plaintiff has made a showing of the employer's condonation of Moving Defendants' discriminatory conduct.

There is, therefore, an adequate basis to hold Moving Defendants liable as aiders and abettors under § 296(6), and Plaintiff's NYSHRL claims may proceed because they sufficiently allege that Moving Defendants actually participated in the conduct in question.[3] *See, e.g.*,

---

[3] During discovery in this matter, Moving Defendants pleaded guilty in an administrative proceeding. Pl. Mot. at Ex. C, ECF No. 135-3. Plaintiff argues that these settlements show that Moving Defendants "actually admitted to the allegations" in the complaint. Pl. Mot. at 7. The Court, however, is not permitted to rely on factual allegations contained in legal briefs or memoranda or to consider exhibits submitted by parties, if these exhibits are not attached to the complaint or incorporated by reference in the complaint, in ruling on a motion to dismiss. *See Friedl v. City*

*Feingold*, 366 F.3d at 158 (an individual who "actually participates" in the discriminatory conduct may be liable as an aider and abettor); *McNulty v. N.Y. City Dep't of Fin.*, 941 F. Supp. 452, 460 (S.D.N.Y. 1996) (denying dismissal of plaintiff's § 296(6) claim against individual defendant because plaintiff sufficiently alleged that defendant "actively participated in the conduct giving rise to a claim of discrimination"). Accordingly, Moving Defendants' motion to dismiss Plaintiff's discrimination and hostile work environment claims under the NYSHRL (Claims Six and Seven) against them in their individual capacities is DENIED.

3. NYCHRL Claims

Because the Court has already determined that Plaintiff's NYSHRL discrimination and hostile work environment claims survive, Plaintiff's claims under the more liberal NYCHRL also survive. "[F]ederal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall." Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, at § 1 (Oct. 3, 2005). Accordingly, Moving Defendants' motion to dismiss Plaintiff's discrimination and hostile work environment claims under the NYCHRL (Claims Eight and Nine) against them in their individual capacities is DENIED.[4]

---

*of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits . . . or relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss." (internal citations, quotation marks, and alterations omitted)). The Court, therefore, does not consider the settlements in adjudicating this motion.

[4] Moving Defendants argue separately that Plaintiff's claims against Sullivan should be dismissed because Plaintiff has not sufficiently alleged Sullivan's "personal involvement in any of the discrimination or hostile work environment allegations." Defs. Mem. at 9. They also contend that Plaintiff's claims against Miranda should be dismissed, because Plaintiff's allegations are "insufficient to constitute 'aiding, abetting or inciting' discrimination or hostile work environment." *Id.* at 10. Plaintiff alleges, however, that all of the Moving Defendants—including Sullivan and Miranda—were personally involved in discriminating against them and creating a hostile work environment by "constantly referr[ing] to [Plaintiff] by derogatory, anti-Semitic names such as 'dirty Jew,' 'dirty

4.  Section 1983 Claims

In the public employment context, the Second Circuit has held that race-based discrimination may be actionable under § 1983 as a violation of equal protection. *See Patterson*, 375 F.3d at 225 (citing *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994)). In order to state a claim under § 1983, "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted). Moving Defendants contend that Plaintiff's claims under § 1983 must be dismissed because their actions were not committed under color of state law.

To satisfy the second element, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Under color of state law "ordinarily requires that the harasser be a supervisor or have some position of authority or control over the plaintiff." *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999). As Plaintiff has not alleged that Defendants held supervisory authority over him, the Court analyzes only whether Defendants exercised authority or control over Plaintiff such that their conduct can be considered state action.

Although the Second Circuit has not taken a definitive position on whether harassment by nonsupervisory coworkers can be construed as state action rather than "merely as personal-frolic hazing or horseplay," *Patterson*, 375 F.3d at 230, it is difficult to establish that the

---

Fucking Jew' or 'the Jew' all in the presence of NYPD supervisors." Compl. ¶ 39. The Court finds, therefore, that the complaint sufficiently pleads the personal involvement of all five Moving Defendants with respect to Plaintiff's NYSHRL and NYCHRL claims.

9

discriminatory conduct was perpetrated "under color of state law" rather than as an essentially private act. "Where the individual defendant is merely a coworker of the plaintiff, such claims are routinely dismissed for failure to state a claim." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317 (E.D.N.Y. 2014); *see also Gomez v. City of New York*, No. 15 Civ. 7524, 2017 WL 3736693 (S.D.N.Y. Aug. 29, 2017) (finding that defendant-employee was not acting under color of state law when he intentionally assaulted plaintiff-coworker). In *Gomez*—a factually similar case—a plaintiff police officer sued the City and individual police officers for assault and for engaging in unlawful discriminatory practices. *Id.* at *3–4. The *Gomez* Court held that the defendant-police officer did not act under color of state law when he assaulted the plaintiff, even though the defendant was on duty and in uniform at the time of the assault, used his department-issued spray to conduct the attack, and relied on his status as a police officer to gain access to the plaintiff. *Id.* at *4. *Gomez* held that although in a typical case, these "indicia of authority could certainly compel the conclusion that [the individual defendant] was acting under color of state law," police officers "exercise actual and apparent authority over civilians that they do not exercise over their co-workers, and an officer is less likely to act under pretense of law vis-à-vis his fellow officers." *Id.* (internal quotation marks and citation omitted). Because the plaintiff was a police officer himself, the defendant-police officer's assault was not accompanied by the "indicia of state action necessary to establish conduct under color of law." *Id.*

The facts alleged here lead the Court to similarly conclude that Moving Defendants were not acting under color of law when they discriminated against Plaintiff. Plaintiff fails to allege that Moving Defendants exercised control over him, or had some position of authority over him. *See Gomez*, 2017 WL 3736693, at *5 ("[P]olice officers do not exercise sufficient authority over each other for their conduct to constitute under color of law."); *Buttaro v. City of New York*, No.

10

15 Civ. 5703, 2016 WL 4926179, at *9 (E.D.N.Y. Sept. 15, 2016) (defendant could not be held individually liable for retaliation because "at the time of the alleged retaliation, he was [plaintiff's] co-worker . . . and there is no allegation that he exercised control over [plaintiff]"). Plaintiff alleges that Moving Defendants committed the discriminatory actions while they were on duty, in a text message group chat with all of the NYPD officers at the WTC Command, in front of NYPD supervisors, and at the WTC Command front desk and locker room. Compl. ¶¶ 44–71. None of these factors, however, is conclusive when assessing whether action is taken under color of law. An officer's "on or off duty" status and the "use of government property" at the time of the incidents do not "transform an act into conduct under color of law." *Gomez*, 2017 WL 3736693, at *4 (citation omitted). Additionally, the fact that the alleged acts took place at the WTC Command is insufficient. *See Martinez v. Colon*, 54 F.3d 980, 982–83, 987–88 (1st Cir. 1995) (holding that a police officer who assaulted a fellow officer at the precinct station was not acting under color of law). Moving Defendants were not carrying out any official responsibilities when they committed the alleged acts; they were acting in their personal capacities. *See Williams v. City of New York*, No. 99 Civ. 2697, 2006 WL 2668211, at *27 (E.D.N.Y. Sept. 11, 2006) ("[W]here the harassment in question does not involve use of state authority or position, the harasser is generally found not to be acting under color of state law."). The alleged discrimination was not accompanied by the "indicia of state action" necessary to establish conduct under color of law. *Gomez*, 2017 WL 3736693, at *5. The Court concludes, therefore, that "[h]azing of this sort, though reprehensible, is not action under color or pretense of law." *Id.* (citation omitted).

Because Moving Defendants were not acting under color of law, they cannot be held liable under § 1983. Accordingly, Moving Defendants' motion to dismiss Plaintiff's claim for

equal protection violations under § 1983 (Claim Ten) against them in their individual capacities is GRANTED.

## CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically, Moving Defendants' motion is GRANTED as to all of Plaintiff's claims against them in their official capacities.  Additionally, Moving Defendants' motion is GRANTED as to Plaintiff's claims under Title VII and § 1983 (Claims One, Two, Three, Four, Five, and Ten) against them in their individual capacities.  The motion is DENIED as to Plaintiff's claims under the NYSHRL and NYCHRL (Claims Six, Seven, Eight, and Nine) against Moving Defendants in their individual capacities.

The Clerk of Court is directed to terminate the motion at ECF No. 115.

SO ORDERED.

Dated: September 17, 2018
       New York, New York

_____
ANALISA TORRES
United States District Judge