UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID ATTALI,

                          Plaintiff,

             -against-

CITY OF NEW YORK, P.O. CHRISTOPHER
DELBROCOLO, P.O. JOSEPH BENEDUCE, P.O.
BRENDAN SULLIVAN, P.O. PHILLIP MIRANDA,
P.O. "JOHN" DRUMMY, DEPUTY INSPECTOR
KEVIN BURKE, SGT. ALEX PORCELLI, SGT. FELIX
SANTANA, and LT. DAVID CHANG, Sued In Their
Individual And Official Capacities,

                          Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/17/2018_

15 Civ. 426 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On January 21, 2015, Plaintiff, former New York Police Department ("NYPD") officer

David Attali, brought this employment discrimination action against Defendants the City of New

York (the "City") and nine police officers. Plaintiff asserts claims for discrimination on the basis

of race, religion, and national origin, retaliation, and a hostile work environment pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the New York State Human

Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"); and the New York City Human

Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). Plaintiff also brings a

claim under 42 U.S.C. § 1983, alleging discrimination in violation of the Equal Protection Clause

of the Fourteenth Amendment. The City and Deputy Inspector Kevin Burke, Sergeant Alex

Porcelli, Sergeant Felix Santana, and Lieutenant David Chang ("Supervisor Defendants," and

with the City, "Moving Defendants"), sued individually and in their official capacities, move for

summary judgment.[1]  Defs. Mot., ECF No. 119.  For the reasons stated below, the motion is

GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff is a Jewish male with dual citizenship of the United States and Israel.  Defs. 56.1

¶ 1, ECF No. 120-20.[2]  On July 7, 2008, Plaintiff became a NYPD police officer, and on July 21,

2011, he was assigned to the World Trade Center Command ("WTC Command").  *Id.* ¶¶ 2, 4.

All of the alleged conduct at issue occurred while Plaintiff was stationed at the WTC Command.

*Id.* ¶ 5.

Plaintiff alleges that he felt compelled to resign in July 2014 due to Defendants' conduct.

Compl. ¶ 29, ECF No. 1.  He alleges that he was discriminated against by his fellow police

officers at the WTC Command, who "constantly referred to [him] by derogatory, anti-Semitic

names such as 'dirty Jew,' 'dirty fucking Jew' or 'the Jew.'"  *Id.* ¶ 39.  He also alleges that his

supervisors "condoned [this] vicious and persistent hateful name calling, bullying and anti-

Semitic behavior."  *Id.* ¶ 36.  Additionally, Plaintiff alleges that his coworkers repeatedly

vandalized his locker at the WTC Command, "writing hateful and abusive language and

messages containing swastikas, newspaper clippings of pork, ham, salami and bacon

advertisements," and the words "dirty Jew" and "hail Hitler."  *Id.* ¶ 41.  Plaintiff alleges that this

discriminatory material on his locker "was in full view of all who walked into the men's locker

room," including his supervisors.  *Id.* ¶ 43.  Plaintiff alleges that his supervisors conducted

mandatory stationhouse inspections but never took any corrective action.  *Id.*

---

[1]  The remaining defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil
Procedure 12(c).  ECF No. 115.

[2]  Unless otherwise noted, Plaintiff admits the facts as described by Moving Defendants in their 56.1 statement of
undisputed facts.  *See* Pl. 56.1 Opp., ECF No. 120-20.

Plaintiff does not allege that Supervisor Defendants made any discriminatory remarks to him.  Defs. 56.1 ¶ 83.  However, as described below, Plaintiff alleges that he requested to be transferred out of the WTC Command, and that Defendant Burke denied his transfer request despite knowing that it was a hostile work environment.  Pl. 56.1 Opp. ¶¶ 76, 83.  He also alleges that Defendant Chang was present while non-supervisory officers made anti-Semitic comments to Plaintiff, and that Chang condoned and tolerated this behavior.  *Id.* ¶ 84.  Plaintiff further alleges that Defendants Porcelli and Santana were present while non-supervisory officers made anti-Semitic remarks to him, and that they failed to follow established NYPD protocol by condoning and tolerating the discrimination, and failing to take remedial action against the officers.  *Id.* ¶ 85.

On May 28, 2014, Plaintiff filed a complaint with the NYPD Office of Equal Employment Opportunity ("OEEO"), alleging that he had been subjected to discriminatory remarks by police officers at the WTC Command for approximately two and a half years.[3]  Defs. 56.1 ¶ 12.  Plaintiff also alleged that unknown persons had affixed pictures of pork chops and bacon to his locker, which had not been removed.  *Id.* ¶ 14.  Plaintiff also alleged that the words "Hail Hitler," "dirty Jew," and "I love Jesus" had been affixed to his locker.  P1. 56.1 Opp. ¶ 14. The OEEO inspected Plaintiff's locker that day and found pictures of pork chops and other meats affixed to his locker, which it photographed and vouchered.  Defs. 56.1 ¶ 15.

On May 30, 2014, Plaintiff submitted a written "complaint of employment discrimination" to the OEEO, in which he stated, "I am always referred to as 'Jew'/stupid

---

[3]  At the time Plaintiff filed his OEEO complaint, he had copies of text messages containing anti-Semitic remarks that had been sent to him by his coworkers.  Plaintiff also had audio and video recordings in his personal cell phone. Defs. 56.1 ¶ 58.  Plaintiff did not tell the OEEO about the text messages and the recordings that he possessed.  *Id.* ¶ 57.

Jew/Dirty Jew.  Non stop comments of me being Jewish.  As well as comments of Hitler + WW2 concentration camps."  *Id.* ¶ 16.  The complaint identified respondents as "[Police Officer] Delbrocolo" and other individuals of the same rank.  *Id.*  That same day, Plaintiff was interviewed at the OEEO by Heriberto Soto, an OEEO investigator.  *Id.* ¶ 17.  Plaintiff elaborated on his allegations, describing numerous instances when police officers made discriminatory remarks, including in the presence of supervisors.  *Id.* ¶ 17–26.

On May 31, 2014, Plaintiff reported to Soto that a police officer had grabbed him by the shirt and asked whether Plaintiff had filed a complaint.  *Id.* ¶ 33.  Plaintiff requested that the OEEO transfer him out of the WTC Command because he was fearful of further retaliation.  *Id.* ¶ 28.  On June 2, 2010, Plaintiff reported to Soto that he felt uncomfortable at the WTC Command and asked if Soto could facilitate a transfer to another command, but was told that the OEEO does not facilitate transfers.  *Id.* ¶ 35.  On this same day, Plaintiff made a written request to be transferred out of the WTC Command, stating, "After some incedents [sic] in which comments were made to me, I do not feel that [the WTC Command] is a compatible work place for me."  *Id.* ¶ 76; Transfer Request, Burke Decl. at Ex. A, ECF No. 121.  On July 15, 2014, Defendant Burke denied Plaintiff's transfer request, purportedly due to his duty status[4] and the WTC Command "minimum manning requirements."  *Id.* ¶ 48.

On August 4, 2014, the OEEO determined that the allegations against the individual police officers could not be substantiated.  *Id.* ¶ 51.  The OEEO also concluded that the allegations concerning the vandalization of Plaintiff's locker "because he is Jewish" were substantiated.  *Id.* ¶ 51.  The OEEO recommended that the Commanding Officer of the WTC

---

[4]  At the time of Plaintiff's request, he was on restricted duty because of "repeated failures to qualify with his service weapon."  Defs. 56.1 ¶ 78.

Command take corrective steps to prevent the display of offensive material in the workplace.  *Id.* ¶ 54.[5]

Defendants argue that Plaintiff voluntarily resigned from the NYPD on July 24, 2014, before the OEEO had finished its investigation.  *Id.* ¶ 3.  Plaintiff disputes this, alleging that he was constructively discharged from the NYPD—i.e., he was "forced to file retirement papers . . . after the City denied his repeated requests for transfer out of the 'hostile work environment' of the [WTC Command] on July 14, 2014."  Pl. 56.1 Opp. ¶ 3.

In January 2015, Plaintiff filed this lawsuit against Defendants.  *See* Compl.  Moving Defendants move for summary judgment against all claims.  ECF No. 119.

## DISCUSSION

I.    <u>Summary Judgment Standard</u>

Summary judgment may be granted only if the court concludes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  A dispute is genuine when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are those which may affect the outcome of a case.  *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to the record.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322–25; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  The movant may

---

[5]  The NYPD's Internal Affairs Bureau ("IAB") later launched an investigation and requested that Plaintiff provide copies of the text messages and audio and video recordings in his possession, which he did.  Defs. 56.1 ¶ 88.  Based on this investigation, departmental charges and specifications were filed against police officers Delbrocolo, Beneduce, Sullivan, Miranda, and Drummy, and these officers were placed on restricted duty and transferred out of the WTC Command.  *Id.* ¶ 89.

satisfy its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(B). In deciding the motion, the court views the record in the light most favorable to the non-moving party. *O'Hara v. Weeks Marine, Inc*., 294 F.3d 55, 61 (2d Cir. 2002).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by factual data. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

II.     <u>Analysis</u>

    A.  Discrimination Claims

        1.  Title VII and the NYSHRL

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NYSHRL makes it unlawful for employers to "discriminate . . . in compensation or in terms, conditions or privileges of employment" on the basis of race, religion, or national origin. N.Y. Exec. Law § 296(1)(a). Courts in this Circuit analyze federal and state discrimination claims together, and apply the same standard of proof with respect to both Title VII and NYSHRL claims. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (analyzing Title VII and NYSHRL claims together and considering them

"the same in all relevant respects" because "in other contexts [the Second Circuit has] applied

federal standards of proof to discrimination claims under the state Human Rights Law").

Under Title VII and the NYSHRL, discrimination claims based on race, religion, and

national origin are governed by the three-step framework established in *McDonnell Douglas

Corp. v. Green*, 411 U.S. 792 (1973). *See Mandell*, 316 F.3d at 377 (religion); *Crawford-Bey v.

New York & Presbyterian Hosp.*, No. 08 Civ. 5454, 2011 WL 4530193, at *3 (S.D.N.Y. Sept. 30,

2011) (race); *Kumar v. N.Y. City Sch. Constr. Auth.*, No. 10 Civ. 3559, 2011 WL 5929005, at

*6–7 (S.D.N.Y. Nov. 29, 2011) (national origin). At the first step, Plaintiff must establish a

*prima facie* claim for discrimination, showing

> (1) that he belonged to a protected class; (2) that he was qualified for the position
> he held; (3) that he suffered an adverse employment action; and (4) that the adverse
> employment action occurred under circumstances giving rise to an inference of
> discriminatory intent.

*Riscili v. Gibson Guitar Corp.*, No. 06 Civ. 7596, 2007 WL 2005555, at *2 (S.D.N.Y. July 10,

2007) (footnotes omitted). This showing is *de minimis*. *See Woodman v. WWOR-TV, Inc.*, 411

F.3d 69, 76 (2d Cir. 2005).

If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to

articulate some legitimate, non-discriminatory reason for its action." *Nieblas-Love v. N.Y. City

Hous. Auth.*, 165 F. Supp. 3d 51, 66 (S.D.N.Y. 2016). If the defendant does so, then the burden

shifts back to the plaintiff to "put forward evidence that would allow a reasonable jury to

conclude that 'the employer's determination was in fact the result of . . . discrimination.'" *Id.*

(quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

It appears that Moving Defendants do not dispute that Plaintiff has satisfied the first and

second elements of this test. Defs. Mem. at 35, ECF No. 127. They contend, however, that

Plaintiff's claim fails because he cannot establish the third element—that Plaintiff suffered an

adverse employment action.  *Id.*  An employer's action "must cause a 'materially adverse change in the terms and conditions of employment,' and not just 'mere inconvenience,' in order to qualify as 'adverse.'"  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005)).  An adverse action "may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006).  With regard to the City, Plaintiff alleges that adverse employment actions were taken in that non-parties Sergeant Soto of the OEEO "had the ability to facilitate [Plaintiff's] transfer requests and failed," and WTC Command Executive Officer Captain Myrie "failed to maintain the confidentiality of [Plaintiff's] OEEO complaint."  Pl. Mem. at 39, ECF No. 136.  With regard to Supervisor Defendants, Plaintiff alleges that he suffered adverse employment actions each time they "neglected their supervisory duties and responsibilities under the NYPD Patrol Guide," and when Defendant Burke denied his transfer request.  *Id.* at 38–39.

The Court agrees with Moving Defendants that Plaintiff cannot demonstrate that he suffered an adverse employment action.  Plaintiff was a police officer in the NYPD from 2008 to 2014.  Defs. 56.1 ¶¶ 2–3.  He was assigned to the WTC Command on July 21, 2011, which Plaintiff characterizes as a "great gig," "amazing," and "a plus job in the police department."  Pl. 56.1 Opp. ¶ 4; Attali Dep. 95:23–25.  There is nothing in the record showing that Plaintiff was fired, demoted, or reassigned to a less desirable office or department during his tenure.  Nor does Plaintiff allege that his compensation was reduced or otherwise altered.  Therefore, the acts Plaintiff complains of did not materially affect the terms and conditions of his employment at the NYPD.  *See Patane*, 508 F.3d at 112.  His position, salary, and benefits remained the same.

The City's alleged failures to adhere to Patrol Guide provisions requiring confidentiality in the handling of OEEO complaints and to conduct locker room inspections during every tour of duty similarly do not constitute adverse employment actions.  No change in Plaintiff's duties or responsibilities, or the terms and conditions of his employment, resulted from such actions or omissions.  *See id.*

Defendant Burke's denial of Plaintiff's transfer requests also does not constitute an adverse employment action.  On June 2, 2014, while the OEEO investigation was pending, Plaintiff made a written request to be transferred out of the WTC Command on the ground that it was not a "compatible work place" for him.  Defs. 56.1 ¶ 76; Transfer Request.  On July 14, 2014, Burke denied Plaintiff's transfer request.  Pl. 56.1 Opp. ¶ 76; Denial of Transfer Request, Burke Decl. at Ex. C, ECF No. 121.  The Second Circuit has held that the denial of a transfer may constitute an adverse employment action when "the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability."  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008).  Here, Plaintiff did not seek to be transferred to a position that was "objectively and materially better than the position [he] occupied," *id.* at 164, but rather, to a comparable position located "anywhere" outside the WTC Command.  *See* Denial of Transfer Request.  Burke's denial of Plaintiff's transfer request, therefore, does not amount to an adverse employment action.

Accordingly, Plaintiff cannot make out a *prima facie* case of discrimination against Moving Defendants.  Because his claim fails at the first step of the *McDonnell Douglas* framework, the Court does not reach the subsequent steps.[6]

---

[6]  The City also argues that, even if Plaintiff were subject to discrimination, it is insulated from Title VII liability under the *Faragher/Ellerth* defense.  Defs. Mem. at 31.  *See generally Burlington Indus., Inc. v. Ellerth*, 524 U.S.

2.   NYCHRL

Plaintiff's complaint also includes a claim for race, religion, and national origin discrimination in violation of the NYCHRL.  Although Moving Defendants move for summary judgment "in its entirety," they do not address this claim on the merits, arguing only that it should be dismissed if the Court dismisses all claims over which it has original jurisdiction. Defs. Mem. at 50–51.  Because Moving Defendants have propounded no legal basis for granting their motion as to Plaintiff's NYCHRL discrimination claim, it survives the motion for summary judgment.  *See Quinlan v. Stryker Corp.*, No. 09 Civ. 7284, 2010 WL 3291807, at *3 n.1 (S.D.N.Y. Aug. 12, 2010); *Commer v. City of New York*, No. 93 Civ. 7408, 1996 WL 374149, at *4 (S.D.N.Y. July 3, 1996).

B.   Retaliation Claims under Title VII

Plaintiff also cannot make out a retaliation claim under Title VII.  Like discrimination claims, retaliation claims under Title VII are analyzed under the *McDonnell Douglas* framework. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) ("Retaliation claims under Title VII . . .  are [] analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework.").  First,

> A plaintiff must present evidence that shows "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."

*Id.* at 315–16 (citation omitted).

---

742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  That defense, developed in the Title VII setting, provides that an "employer may escape liability by establishing, as an affirmative defense, that [i] the employer exercised reasonable care to prevent and correct any harassing behavior and [ii] that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided."  *Vance v. Bell State Univ.*, 570 U.S. 421, 424 (2013).  Because the Court concludes, however, that Plaintiff has failed to demonstrate an issue of fact sufficient to forestall summary judgment as to his Title VII discrimination claims, it does not address *Faragher/Ellerth* in this context.

As with his Title VII and NYSHRL discrimination claims, Plaintiff cannot satisfy the "adverse employment action" prong of a retaliation claim. *See supra* Part II.A.1. The Court, therefore, does not reach the remaining prongs.

Accordingly, Moving Defendants' motion for summary judgment on Plaintiff's retaliation claim under Title VII is GRANTED.

### C. Hostile Work Environment Claims

#### 1. Title VII and the NYSHRL

Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard. *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013).

> In order to prevail on a hostile work environment claim [under Title VII and the NYSHRL], a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer.

*Id.* at 124 (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)). The Court considers each element in turn.

##### a. Evidence of a Hostile Work Environment

"Proving the existence of a hostile work environment involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold*, 366 F.3d at 150 (internal quotation marks and citation omitted). Incidents of harassment must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Nieblas-Love*, 165 F. Supp. 3d at 68 (internal quotation marks and citation omitted). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). As the Second Circuit has elaborated, "the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotation marks and citation omitted).

Plaintiff has offered sufficient proof to allow a fact-finder to conclude that he experienced pervasive harassment, ridicule, and insult because he is Jewish. *See Feingold*, 366 F.3d at 150–51 (holding that defendant's frequent comments demonstrating overt animosity and anti-Semitism were pervasive and personally insulting). Plaintiff alleges that Defendants "constantly referred to [him] by derogatory, anti-Semitic names such as 'dirty Jew,' 'dirty fucking Jew' or 'the Jew.'" Compl. ¶ 39. Throughout Plaintiff's tenure at the WTC Command, he alleges that police officers called him epithets like "dirty Jew" and "fucking kike," told him that "Jews go up in fire quick," and referenced gas chambers, saying he "should be used to it." Defs. 56.1 ¶ 19; Attali Dep. 48:21–25, 141:5–11, 116:5–14. Plaintiff also received text messages from his fellow police officers stating, "fuck you Jew," "Die Jew," and "U will burn at the stake Jew." Text Messages, ECF No. 146-1. Police officers sent Plaintiff photos of Adolf Hitler and referenced Nazi concentration camp "ovens" and "crispy skin." *Id.* Plaintiff's locker at the WTC Command was vandalized with messages consisting of swastikas, newspaper clippings of pork and ham, and the caption "Hail Hitler." Locker Photographs, ECF No. 120-11. Courts in this Circuit have noted that the "Nazi regime and swastika are symbols of hatred capable of arousing fear and intimidation." *Orlando v. BNP Paribas N. Am., Inc.*, No. 14 Civ. 4102, 2015 WL 6387531, at *17 (S.D.N.Y. Oct. 22, 2015); *see also United States v. Figueroa*, 548 F.3d 222, 228 (2d Cir. 2008) ("It was apparently, and understandably, assumed by the district court and the

parties that the swastika is commonly associated with white supremacism and neo-Nazi groups harboring extreme forms of racial, religious and ethnic hatred and prejudice against minority groups . . . ."). Moreover, Plaintiff alleges that these anti-Semitic remarks were regular, continuing over a period of two years, Defs. 56.1 ¶ 63; Attali Dep. 253:24–254:2, rendering them not only frequent and severe, but also "continuous and concerted." *Nieblas-Love*, 165 F. Supp. 3d at 68.

In addition, a rational fact-finder could conclude that Plaintiff subjectively experienced a hostile work environment. Plaintiff testified that he started coming to work early to avoid changing in the locker room with his coworkers. Attali Dep. 239:4–19. This treatment became so unbearable that he asked for a transfer "anywhere" because "all [he] wanted [was] to be left alone, just to get away from them. . . . I couldn't handle it inside of my head, seeing them every day." *Id.* 95:17–96:2. He also testified that he has been forced to seek professional psychotherapy to cope with these work conditions. Pl. 56.1 Opp. ¶ 89; Attali Dep. 24:1–13, 34:7–21. Plaintiff, therefore, has raised a material issue of fact as to the first prong of a hostile work environment claim under Title VII and the NYSHRL.

### b. Evidence to Impute Liability to Moving Defendants

For the purposes of the second prong, there can be no imputed liability unless (1) the complained-of conduct was done by a supervisor, or (2) "the employer 'failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Summa*, 708 F.3d at 124 (quoting *Duch*, 588 F.3d at 762); *see also Swiderski v. Urban Outfitters, Inc.*, No. 14 Civ. 6307, 2017 WL 6502221, at *7 (S.D.N.Y. Dec. 18, 2017) (explaining that, under the

NYSHRL, there is no imputed liability for hostile work environment "unless the employer became a party to it by encouraging, condoning, or approving it").

Plaintiff alleges that his supervisors were aware of and witnessed the regular harassment by his coworkers, but that they failed to take appropriate corrective action. Compl. ¶¶ 39, 43. Plaintiff testified that Chang, Santana, and Porcelli were present and overheard when his coworkers made anti-Semitic comments to Plaintiff. Attali Dep. 81:24–82:5. Plaintiff also testified that, although Burke was not present when his coworkers made discriminatory remarks to Plaintiff, *id.* 82:21–25, Burke denied his transfer request despite knowing that Plaintiff was in a hostile work environment, *id.* 212:05–216:25; *see also* Burke Dep. 57:5–58:1. Plaintiff also claims that his locker was consistently vandalized with anti-Semitic materials, Attali Dep. 38:19–23, 99:21–101:12, that none of his supervisors took any corrective action despite NYPD policy requiring daily command inspections of the locker room, Pl. 56.1 Opp. ¶ 15; Soto Dep. 154:13–155:12, and that some of these materials were on his locker for almost a year. *See* IAB Worksheet, ECF No. 147-7. In addition to his testimony, Plaintiff submits video evidence in which one officer calls Plaintiff a "dirty Jew" in the presence of Defendant Santana, *see* Bellistri Decl. at Ex. B, ECF No. 146-1, and an audio recording where Defendants Santana and Porcelli are present when an officer says to Plaintiff, "I wish I could go back to the 30s and shake Hitler's hand." *Id.* In these incidents, Plaintiff's supervisors witnessed the harassment but took no remedial action, effectively condoning the conduct.

Accordingly, Plaintiff has raised a triable issue of fact as to whether the City and Supervisor Defendants "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Summa*, 708 F.3d at 124 (quoting *Duch*, 588 F.3d at 762).

c. *Faragher/Ellerth* Affirmative Defense

The City argues that it is entitled to summary judgment on Plaintiff's Title VII hostile

work environment claim because of the *Faragher/Ellerth* defense.  Defs. Mem. at 31.  Pursuant

to the Supreme Court's holdings in *Faragher v. City of Boca Raton*, 524 U.S. 775

(1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998),

> An employer (who has not taken a tangible employment action against a plaintiff) may raise as an affirmative defense to liability on a hostile work environment claim "(a) that the employer exercised reasonable care to prevent and correct promptly any [harassing] behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Cooke v. Cty. of Suffolk*, 16 F. App'x 35, 37 (2d Cir. 2001) (summary order) (quoting *Ellerth*,

524 U.S. at 765 and *Faragher*, 524 U.S. at 807).  The *Faragher/Ellerth* defense is "an

affirmative defense on which [the employer] has the burden of proof."  *Redd v. N.Y. Div. of*

*Parole*, 678 F.3d 166, 182 (2d Cir. 2012).

It appears that Plaintiff does not dispute that the City has not taken a tangible

employment action against him.  Pl. Mem. at 46–50.  Plaintiff, however, contends that the City

does not establish the first element.  *Id.* at 49–50.  "An employer may demonstrate the exercise

of reasonable care, required by the first element, by showing the existence of an anti-harassment

policy during the period of the plaintiff's employment, although that fact alone is not always

dispositive."  *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006) (citing *Mack v. Otis*

*Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003)).  Here, there is a genuine issue of fact as to

whether the City has satisfied this prong.  Moving Defendants argue that the NYPD Patrol Guide

prohibits all forms of employment discrimination, as well as the posting of offensive materials of

any kind in the stationhouse.  Defs. Mem. at 38–39; Patrol Guide Proc. No. 205.36, ECF No.

120-6; Patrol Guide Proc. No. 205.37, ECF No. 120-7.  The NYPD also provides ongoing

training regarding anti-discrimination policies and procedures.  *See* Defs. Mem. at 38.  However, although the NYPD has clear rules and guidelines in place to address discrimination in the workplace, "this fact alone is not dispositive."  *Ferraro*, 440 F.3d at 102.  "If the policy is ineffective—for example, if an employer fails to adequately or promptly investigate a complaint, or the policy is generally ignored—the employer may not avail itself of the *Faragher/Ellerth* defense."  *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14 Civ. 6416, 2017 WL 2374363, at *13 (S.D.N.Y. May 31, 2017), *appeal docketed*, No. 17-2045 (2d Cir. June 29, 2017).  Plaintiff here does not dispute the "mere existence" of a harassment policy and complaint procedure; he disputes the adequacy of such policies and has proffered evidence that Supervisor Defendants "failed to carry out their responsibilities mandated by said policy and procedure."  Pl. Mem. at 49.

Even assuming that Defendants satisfy the first prong of the *Faragher/Ellerth* defense, they fail to show, as a matter of law, that Plaintiff "unreasonably failed to take advantage" of any policy.  Plaintiff filed an internal charge of discrimination in May 2014, in which he alleged that he had been subjected to discriminatory remarks by WTC Command police officers for approximately two and a half years.  Defs. 56.1 ¶ 12.  This delay from when the discriminatory conduct first began to when Plaintiff filed his OEEO complaint is significant, and a jury could certainly find it unreasonable.  However, it is shorter than in other cases in which the *Faragher/Ellerth* defense has been found to preclude relief as a matter of law at the summary judgment stage.  *See, e.g.*, *Clarke v. Mount Sinai Hosp.*, No. 05 Civ. 566, 2007 WL 2816198, at *11 (E.D.N.Y. June 28, 2007) (three year delay unreasonable).

Moreover, Plaintiff submits evidence that the City and Supervisor Defendants failed to report and correct discrimination directed at Plaintiff occurring in their presence (Bellistri Decl.

at Ex. B), failed to inspect the locker room on a daily basis as required by NYPD procedure
(Burke. Decl. at Ex. D, ECF No. 121), failed to facilitate a transfer based on Plaintiff's hostile
work environment (Documentation of Transfer Requests, ECF No. 146-2; Soto Dep. 31:3–
32:25), failed to preserve digitally recorded evidence in Plaintiff's OEEO file (Soto Dep.
139:11–25), divulged his confidential OEEO complaint thereby subjecting Plaintiff to retaliation
(Attali Dep. 240:4–8), and denied Plaintiff's transfer requests despite knowing that he was in a
hostile work environment (Burke Dep. 57:5–58:1).[7]  *See* Pl. Mem. at 46–47.  There is also
evidence that Plaintiff repeatedly requested Soto and Burke's assistance with a transfer out of the
WTC Command, specifying in a June 2, 2014 memorandum to Burke that "comments were
made to [him]" and in a June 25, 2014 email to Burke that "racist messages were put on [his]
locker."  Burke Decl. at Exs. A–C, ECF No. 121; *see also* Pl. 56.1 Opp. ¶¶ 28, 33, 35, 40, 42, 48;
Documentation of Transfer Requests; Soto Dep. 31:3–32:25.  A reasonable jury could, therefore,
find that Plaintiff took advantage of preventive or corrective opportunities offered by the NYPD
and that his delay in filing a complaint with NYPD's OEEO was reasonable.  *See, e.g.*,
*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 (2d Cir. 2010) ("Determining whether a
plaintiff has unreasonably failed to take advantage of the options provided in an employer's
sexual harassment policy is not as formulaic as [defendant] would have us hold.  Rather, it
depends on the facts and circumstances of a given case and can, as it does here, raise a question
for the jury."); *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (reversing grant of
summary judgment, because the court "must assume that a factfinder will credit [plaintiff's]
version of events and conclude that [defendant] failed adequately to investigate and promptly to

---

[7]  Burke testified that he saw Plaintiff's locker on or about May 28, 2014, and that he "believed [the locker] was
something of a hostile work environment," but that he nevertheless denied Plaintiff's June 2, 2014 transfer.  Burke
Dep. 57:5–58:1.

correct her . . . reports of sexual harassment" and therefore "cannot conclude as a matter of law that [defendant] has so conclusively demonstrated the effectiveness of its anti-harassment policy or the unreasonableness of [plaintiff's] actions to be absolved from liability"); *Armstrong v. Metro. Transp. Auth.*, No. 07 Civ. 3561, 2015 WL 992737, at *5 (S.D.N.Y. Mar. 3, 2015). It is for a jury, not the Court, to determine whether Plaintiff unreasonably failed to take advantage of the NYPD's policies.

Accordingly, Moving Defendants' motion for summary judgment on Plaintiff's Title VII and NYSHRL hostile work environment claims is DENIED.

## 2.  NYCHRL

Because Plaintiff has adequately demonstrated a hostile work environment claim under the NYSHRL, he has also done so under the broad and remedial standards of the NYCHRL. *See, e.g.*, *Weiss v. Dep't of Educ.*, No. 09 Civ. 1689, 2012 WL 1059676, at *11 (S.D.N.Y. Mar. 29, 2012) (denying summary judgment on plaintiff's NYCHRL hostile work environment claims where court already denied summary judgment on analogous federal and state law claims). "[F]ederal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall." Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, at § 1 (Oct. 3, 2005). Accordingly, Moving Defendants' motion for summary judgment on Plaintiff's NYCHRL hostile work environment claim is DENIED.

## D.  Constructive Discharge Claims

Plaintiff also claims that he was constructively discharged on August 22, 2014, when he was forced to retire from the NYPD because he "could no longer withstand the daily psychological and emotional torture and embarrassment." Compl. ¶¶ 89–90. Constructive discharge occurs when "an employer discriminates against an employee to the point such that his

'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"  *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)).  "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign.'"  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Suders*, 542 U.S. at 147).  This standard is even more demanding than that required to prevail on a hostile work environment claim.  *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014).  In addition, the Second Circuit requires a showing of intent in a constructive discharge claim: a plaintiff must establish that "there remains a genuine issue of material fact as to whether a defendant acted deliberately in engaging in conduct that created the workplace conditions at issue" in order to survive summary judgment.  *Creacy v. BCBG Max Azria Grp., LLC*, No. 14 Civ. 10008, 2017 WL 1216580, at *12 (S.D.N.Y. Mar. 31, 2017).

Plaintiff alleges that he was forced to retire because of the "hostile work environment and subsequent denial of his transfer requests."  Compl. ¶ 91.  A reasonable employee may have felt compelled to quit his job if his coworkers were repeatedly allowed to disparage and harass him without consequence, and if his request to transfer out of the hostile work environment was denied.  Plaintiff, therefore, has offered evidence that would permit a jury to find that his working conditions were so intolerable that a reasonable person would feel compelled to resign.

However, even viewing the totality of the circumstances as a whole, in the light most favorable to Plaintiff, these alleged facts at most show negligence by Moving Defendants, not deliberate conduct intended to make Plaintiff resign.  To show deliberateness on the part of the employer, "something beyond mere negligence or ineffectiveness is required."  *Whidbee v.*

*Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000).  As in *Whidbee*, the City and Supervisor Defendants' conduct "might be seen as evincing a lack of concern about the plaintiff['s] situation," but "this evidence does not support an inference that [they] intended to create intolerable workplace conditions." *Id.*  In sum, "[a]s ineffective or even incompetent as [Moving Defendants'] handling of the matter may have been, it does not rise to the level of deliberate action required" to show constructive discharge.  *Id.*; *see also O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 394 (S.D.N.Y. 2001) (granting summary judgment on constructive discharge claim where plaintiff did not adduce evidence that defendant "deliberately acted in such a manner to force [plaintiff's] resignation").

Accordingly, Moving Defendants' motion with respect to Plaintiff's constructive discharge claim is GRANTED.

### E.   Section 1983 Claim

Moving Defendants also move for summary judgment on Plaintiff's § 1983 claim and all claims against Supervisor Defendants in their official capacities.  Defs. Mem. at 50.  Moving Defendants argue that summary judgment should be granted on Plaintiff's § 1983 claim because Plaintiff has not shown that "the challenged acts were performed pursuant to a municipal policy or custom" and on Plaintiff's claims against Supervisor Defendants in their official capacities as duplicative of the claims against the City.  *Id.*  Plaintiff has not substantively responded to these arguments, stating only that "[c]laims under § 1983 are brought solely against the Supervisory Officer Defendants in their individual capacity."  Pl. Mem. at 52.

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); *see also Douglas v.*

*Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (granting summary judgment in favor of defendant on all of plaintiff's claims that were not addressed by plaintiff in its opposition papers).  Accordingly, Moving Defendants' motion for summary judgment on Plaintiff's § 1983 claim against them and claims against Supervisor Defendants in their official capacities is GRANTED.

## CONCLUSION

For the reasons stated above, Moving Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, the motion is GRANTED as to Plaintiff's Title VII and NYSHRL discrimination claims (Claims One, Two, Three, and Six), Plaintiff's retaliation claim (Claim Four), and Plaintiff's claim under Section 1983 (Claim Ten) as to the City and Supervisor Defendants.  Summary judgment is also granted on Plaintiff's constructive discharge claim as to the City and Supervisor Defendants.  Moving Defendants' motion is DENIED as to Plaintiff's Title VII hostile work environment claim as to the City (Claim Five), and Plaintiff's NYSHRL and NYCHRL hostile work environment claims (Claims Seven and Nine) and Plaintiff's NYCHRL discrimination claim (Claim Eight) as to the City and Supervisor Defendants in their individual capacities.

The Clerk of Court is directed to terminate the motion at ECF No. 119.

SO ORDERED.

Dated: September 17, 2018
      New York, New York

_____
ANALISA TORRES
United States District Judge

21